Before we begin, I'd like to say that Judge Branch and I would like to extend a warmest welcome to Judge Garen Gales from the Southern District of Florida, who is our visiting judge this week. Unlike Blanche DuBose and streetcars, we're not dependent upon the kindness of strangers. We're dependent upon the kindness of our friends, and Judge Gales is a friend. He comes well-experienced and well-equipped to help us. Ten years on the state court bench. Four, I believe it now, is on the federal court bench and practiced before that. He, I will tell you all before we start, is a fully authorized and full member of this panel. He has every bit as much authority and duty to decide the cases as Judge Branch and I do. He also, I consider him as what I refer to our visiting judges as full, load-bearing members of the court, which means they get their share of the work as well as their participation in the case. With that said, let's take up the first case, which is Hanvey Scott, and we will hear from Mr. Agrawal. Good morning, Your Honor, and may it please the court. I'm Amit Agrawal, Florida Solicitor General, appearing on behalf of all the appellants in this case. Unless the court would prefer otherwise, I'd like to start out by making three big-picture points that fairly encapsulate our position on appeal and that perhaps may be of some assistance to the court in assessing the very important issues raised by this case. First, in a nutshell, our position is that the stay panel of this court got it right when it concluded just a few months ago that finding precedent holds that Florida's discretionary clemency system is not facially unconstitutional, even though the applicable regime does not require clemency decisions to be made pursuant to specific standards. In our judgment, that principle standing alone is sufficient to resolve this case, and different and perhaps more difficult questions can and should be left for another day. Second, while our good friends on the other side take issue with the stay panel's interpretation of this court's precedent, it is undisputed that no case in the history of the Republic has ever accepted plaintiff's constitutional claims here, and I'd like to be specific. No case, state or federal, published or unpublished, district court or appellate court, from this or from any other circuit, has ever held or even implied that clemency decisions in general or clemency decisions implicating vote restoration in particular must be made pursuant to specific standards. And third, serious doctrinal and practical consequences could flow from accepting plaintiff's conceitedly novel constitutional theory, and I'd like to flag just a few of those for the court. First, implications for every other species of executive clemency out there. Full pardons, conditional pardons, commutations of sentences, restoration of the individual right to keep and bear arms, and restoration of every other civil right, including right to serve on a jury and to run for public office. Second, practical implications for the federal pardon power set out in Article II, Section 2, Clause 1 of the United States Constitution. It now appears to be undisputed that plaintiff's constitutional theory, if accepted, would render the federal pardon power unconstitutional as applied to Floridians who have a federal felony conviction, are not allowed to vote because of that conviction, and who want to get back their right to vote by applying for a presidential pardon, which conceitedly is not directed by neutral and specific criteria. And finally, as an amicus brief submitted by the state of Missouri points out, there are 48 states that take the vote away from convicted felons, including during incarceration. Those convicted felons, of course, enjoy First Amendment rights, just like all American citizens. And as the amicus points out, the practical doctrinal implication of plaintiff's constitutional theory would be to invalidate the clemency systems of all 48 of those states insofar as their clemency systems provide a mechanism. Just curious, what are the other two states? I didn't know there were two. Vermont and New Hampshire, Your Honor, which allow convicted felons who are incarcerated to vote while they're in prison. So your argument is even California takes away the voting rights of convicted felons? California does take away convicted felons' voting rights, Your Honor. I'm sorry. Florida is in a small class, as I understand it. Of the 50 states in the District of Columbia, only Florida, Iowa, and Kentucky have the system employed by Florida, right? Where there's this unfettered discretion by the executive to decide whether or not rights are restored. Is that correct? I don't think that's exactly correct, Your Honor, but you make a fair point, which is that there are different categories of felon disenfranchisement statutes. We've argued on page 24, footnote 4 of our brief, and I don't think this is disputed, that there are approximately 13 other states that provide for purely discretionary restoration of the ability to vote with respect to some or all categories of convicted felons, even after they've completed all the terms and conditions of their incarceration. I think what Your Honor's question is getting to, and it's a fair point, is that Florida's law sweeps a little bit broadly and that some of those other laws that we've referred to in footnote 4, some of those other states that we've referred to in footnote 4, they don't apply to every felony conviction. They only apply to some. But our point is that with respect to the legal issue that's in front of the court, there are lots of states that have purely discretionary clemency processes implicating whether you can get back the ability to vote. I just want to narrow down what we're talking about here. Two states, you're never disenfranchised based on a felony conviction. And as I understand it, the overwhelming majority of states, restoration of rights are restored automatically once you either complete your sentence and or parole or probation, correct? For some categories of felons, the majority of states do provide for automatic restoration. That's right, Your Honor. So would I be incorrect to say that at least 40 states restore rights automatically for some felony convictions? We think it's for some. I don't remember seeing the number 40, Your Honor. I believe that. I'm using an approximate. I'm saying approximate. Yes, Your Honor. There are a lot of states that provide for automatic restoration, especially with Your Honor's qualification as to some categories. How many of the states employ no standards for this important decision? So that's a great question, Your Honor. And it points to the distinction between two very different things. One is clemency processes that provide a mechanism by which a convicted felon can get back the right to vote at some point. And the other is laws that provide for a non-clemency process by which the right to vote can be restored. Now, with respect to the first category, Your Honor, we're not aware of any state that has clemency processes that are directed by neutral and specific criteria. And certainly the norm is that clemency. You're talking about the difference between automatic and non-automatic. When you say clemency versus non-clemency restoration. Yes, Your Honor. Okay. Yeah. And, but a state certainly, as I think Your Honor's question points out, a state certainly has the prerogative to adopt a policy that provides for automatic, non-discretionary, non-non-discretionary restoration of the right to vote. And states, as Your Honor has pointed out, have resorted to that mechanism. Florida's... Okay. Okay. I'm sorry to interrupt you. Yeah. But, okay, there are states that, whether it's all felony convictions or some category of felonies, where rights are restored automatically once a person has completed his or her term of incarceration and or parole and probation, correct? Yes, Your Honor. And then there are other states that will, that have some process for which someone would apply to the executive to make that determination. To the executive or maybe even to the courts. Okay. Yes. To the executive or the courts. Yeah. But other than Florida, Kentucky, and Iowa, all those other states at least have some criteria, correct? So, with respect to some categories of felons, yes. With respect to the ones who are automatically re-enfranchised, yes. With respect to the ones that are not, no. And where there's no criteria, those would be a certain category like a capital murder or something along those lines. Felony sexual offenses, that type of thing. Yes, Your Honor. You talked... I'm sorry. Just before we leave that, I didn't think any state provided for the restoration of rights, including voting rights, for capital murder. Am I wrong about that? I don't know of any such state, Your Honor. Okay. I thought I heard you say the contrary. I didn't want to let that pass. No, and I'm sorry for any mistake on my part. Are pardons and commutations different from a restoration of voting rights? I mean, you seem to lump them all together. I mean, couldn't one restore a defendant's voting rights without pardoning that person or commuting his or her sentence? Yes, absolutely. In Florida, though, the only mechanism by which a convicted felon can regain the right to vote is through the pardon process or a species of the pardon power. Well, you say through the pardon process. When you pardon someone or commute their sentence, isn't that different than saying you have the right to vote? I mean, the conviction, the person would still have the conviction and all the things that come with that and all the other ramifications that come with that. So one can make, the governor could, or the board could make the decision to allow someone to vote without commuting his or her sentence or giving a full pardon, right? They could, and Florida does have, as Your Honor's question points out, different kinds of clemency that are available to applicants. One is you can apply for a full pardon, which would relieve the applicant of all the consequences of the felony conviction. Or you can apply, for example, for restoration of civil rights. Which would still be an application of the pardon power, Your Honor, but it's a limited application. You know, for our purposes, I think that Your Honor's questions point out, and this is an absolutely fair point, that there are legitimate policy concerns that have been raised. Legitimate policy arguments that have been raised and that absolutely warrant careful consideration. Our judgment is that those policy arguments ought to be submitted to the policymaking branches of state government. And with respect to the legal question that's in front of the court, we do, as the state panel pointed out, have controlling authority holding that purely discretionary restoration of the right to vote via the clemency power is not facially unconstitutional. And I'd like to talk about some of those cases, if I may. Before you get into those, is a policy of complete discretion in this arena always facially constitutional? Is really the only way that you could attack it? Is this what your argument is, that you could attack it constitutionally, is to go with an as-applied challenge? So, yes, Your Honor, a purely discretionary clemency process is not facially unconstitutional under controlling authorities that were identified by the state panel, including Beecham v. Breiterman, Connecticut Board of Pardons v. Dump Shack, Ohio Adult Parole Authority v. Woodard, this Court's decision in Smith v. Snow, which really speaks quite precisely to a lot of the important issues in this case. We have case after case after case from the Supreme Court and this Court making it clear that purely discretionary pardon and clemency processes are not facially unconstitutional. And then, as Your Honor's question points out, there is the possibility of as-applied challenges that could be raised in certain specific circumstances. But as the state panel pointed out, here we don't even have an allegation from plaintiffs that, in their cases, discretion was exercised in contravention of any constitutional prohibition, including anti-discrimination prohibitions, viewpoint discrimination, as this Court pointed out, and its stay order. We don't even have a suggestion that that happened to any of the plaintiffs in this case. And so what that basically leaves is, is the mere possibility that discretion could be exercised unwisely or even inappropriately in a particular case sufficient to establish the facial invalidity of the system. And the short answer to that question is we have controlling authority that says no, and we don't have any case in the history of the Republic that goes the other way. So with the current administration, they've only granted the restoration of rights to less than 3,000 individuals. And in the last administration, in office for half the time, there were about 150,000 grants. And in the administration before that, over the course of eight years, there were about 70,000 grants. So what explains that discrepancy between the current administration and the last two? What explains the discrepancy? Yes. What explains the discrepancy? What explains that discrepancy? Is a change in the rules of executive clemency that new rules were promulgated in March of 2011. And before that, under the old rules, there was various kinds of either streamlined or automatic restoration of rights. We're not arguing for a second that that's impermissible. We're just saying it's not constitutionally mandated. And again, we don't have any authority that goes the other way. I'd also respectfully direct Your Honor's attention to the Supreme Court's decision in Richardson v. Ramirez. There, the court actually mentioned in the statement of the case that plaintiffs had complained that under the clemency process that was available to convicted felons in California, very, very few, I think it was something like 0.5 percent, were able to obtain relief via the clemency process. But in that case, though, the court was talking about clemency, not simply the restoration of voting rights, right? The challenge was to the state's authority to disenfranchise convicted felons at all. And in the context of that challenge, the court observed that there was a clemency process by which even felons who had completed all the terms and conditions of their incarceration could get back their right to vote, including through a gubernatorial pardon. But that case and other cases, has any court specifically talked about the restoration of voting rights as opposed to pardons and clemency in a broader sense? The case that speaks most directly to the issue, Your Honor, is Beecham v. Braderman. And as all three members of the state panel concluded, Beecham held that Florida's discretionary clemency system does not facially violate the 14th Amendment insofar as it provides for discretionary restoration of the right to vote. And as the state panel also pointed out, Beecham is controlling authority. It's never been overruled by the Supreme Court. It's been cited with approval by the Supreme Court, for example, in Richardson v. Ramirez and by this court sitting on Bonk in Johnson v. Governor of the State of Florida. And of course, more importantly, we have post-Beecham authority from this court and from the Supreme Court, the cases that I mentioned before, that confirm, as the state panel stressed, the broad discretion of the executive to grant or deny clemency, Your Honor, even when life is at stake. And think about that for a second, because that was the case in Smith v. Snow, where a felon who had been sentenced to death applied for a commutation of his death sentence. And it was undisputed that the state of Georgia had a purely discretionary process for deciding whether to commute that death sentence. So quite literally, every single right conceivable was at stake for that clemency applicant, including the right to vote. And nevertheless, this court held that that purely discretionary clemency system did not violate the Constitution. And I'd like to, if I may, talk about why, because this court's decision in Smith v. Snow really does speak quite precisely to some of the most important issues in this case. What's different about clemency? Why is it okay to have this unfettered discretion in clemency processes? Well, the court said for a couple of reasons. One is because clemency does not take rights away. At the end of the day, what plaintiffs are complaining about is a loss of the right to vote. And Smith v. Snow points out, not exactly in the voting rights context, Your Honor, but substantially analogous, that that problem is caused by the criminal conviction, not by the absence of mercy in the form of executive clemency. And the criminal conviction, of course, is entered in full compliance with all the robust procedural safeguards to which all criminal defendants are entitled before a judgment of conviction can be entered or become final on direct review. So first part of the analysis is clemency can only help the applicant. It can't hurt them. It's intended to serve as a check on the exercise of judicial power, as Chief Justice Rehnquist pointed out in Ohio Adult Parole Authority v. Woodard. And the second part of this analysis, Your Honor, and this is kind of a point that the court gets to in Smith v. Snow, is so you've got the robust procedural safeguards that attend the entry of the criminal conviction. Then you've got the fact that clemency can only help the applicant. And on top of that, it was undisputed that the Supreme Court and Connecticut Board of Pardons v. Dumbshat held that no process is due when someone is applying for clemency. And in Dumbshat, the applicant was applying for commutation of a life sentence. And what this Court said in Smith v. Snow is if you don't have a right to procedures, the purpose of which is to prevent arbitrariness and curb discretion, then you clearly do not have a right to challenge the fact that the decision is discretionary. And that analysis, of course, applies directly to plaintiff's constitutional claims in this case. Is voting and expression protected by the First Amendment? Your Honor, the Supreme Court has never said that the First Amendment codifies a generally applicable right to vote. Our respectful recommendation to the Court is we're not asking you to issue any kind of sweeping or novel constitutional ruling or to decide issues that you don't have to in order to dispose of this case. So we don't want the Court to rule out the possibility that the First Amendment might provide some protections for certain expressive and associational interests that are tied to and derived from the right to vote where it exists. But here's the point. Any expressive and associational interests that are tied to and derived from the right to vote cannot apply, whereas here there is no right to vote in the first place. And why isn't there a right to vote? Because plaintiffs have conceitedly lost their right to vote pursuant to the State's invocation of the affirmative sanction that is set out in Section 2 of the 14th Amendment as authoritatively construed by the Supreme Court in Richardson v. Ramirez. And I would point out, because I think this is a pretty important point, I'd emphasize for the Court, plaintiffs in this litigation did challenge the process by which they lost their right to vote in the sense that they challenged Florida's disenfranchisement statutes and the constitutional provisions. The District Court rejected that challenge. You'll find that at docket entry 144, page 39. And plaintiffs have not taken an appeal from that aspect of the District Court's judgment. So our position, to provide a short answer to Your Honor's question, our position is a convicted felon who has lost the right to vote pursuant to Section 2 of the 14th Amendment does not and cannot have a right to vote under the First Amendment. And that fairly modest submission, Your Honor, we think provides a sufficient basis for disposing of plaintiff's First Amendment challenge. But a non-convicted felon, the First Amendment does guarantee his or her right to vote. I would not say that, Your Honor, but we're not asking you to rule out the possibility that there are some expressive and associational interests that are tied to voting. It's not a freestanding right to vote. And think about it this way. We've got the 15th Amendment, the 19th Amendment, the 24th Amendment, the 26th Amendment, all of which provide specific codifications protecting the right to vote. Are we to believe that all those codifications are entirely superfluous and that the First Amendment actually provided a freestanding right to vote to all people who could invoke its protections? No one has ever gone that far. We don't think the Court needs to get into whether and to what extent the First Amendment might protect the right to vote in other contexts because, as the State panel pointed out, the First Amendment cases to which plaintiffs refer are inapposite in the reenfranchisement context. I see that my time is starting to run out. I'd like, if I may, to address the issue of conjunctive relief. It is now undisputed that the District Court had no authority to permanently prohibit the State from discontinuing clemency processes implicating restoration of voting rights. We've argued in our brief that that concession, which you'll find on page 19 of Plaintiff's Answer Brief, compels the conclusion that the other challenged aspect of the injunction also has to be reversed. This was the aspect of the injunction that commanded the Executive Clemency Board to promulgate neutral and specific criteria within 30 days. Your argument being if you don't have to grant any reenfranchisement, you have no authority to order the board, clemency board, to adopt standards for granting reenfranchisement, right? That's exactly right. All right. I think we have your argument. We'll give you one minute added to your reply time since you left it on the table. And here now for Mr. Sherman. Thank you very much, Your Honors. Good morning, Your Honor, and may it please the Court. John Sherman for the appellees. The District Court's judgment should be affirmed for the following reasons. And I'd like to make several broad arguments at the outset and note in each of these arguments where the appellants, our friends at the appellants table, ignore binding precedent that should compel a different result than they want and should compel affirming the judgment in this case. Supreme Court precedents compel the conclusion that the right to vote is protected by the First Amendment and that arbitrarily licensing or allocating that right to vote is unconstitutional under binding precedent. Felons, though presently disenfranchised and ineligible to vote as a matter of state law, nevertheless suffer a federal constitutional injury because of this arbitrary licensing or allocation of the right to vote. What's your best First Amendment case applied to voting and what does it hold in your view? Excuse me, Your Honor. What's your best case for the proposition that the First Amendment viewpoint doctrine applies to the right to vote reenfranchisement? Well, it's two lines of precedent, Your Honor. You don't have a case holding that. You're asking to meld other cases, which is fine. The well-settled principle from the First Amendment unfettered discretion case is that the Supreme Court has decided since 1938. None of which have been implied in any reenfranchisement context. That's true, Your Honor. So you're asking us to be the first court of appeals in the country to hold this, correct? That is true. The application. The district court was the first district court in the country to hold this, correct? That is true, Your Honor, yes. The unfettered discretion doctrine is well settled and longstanding and has been applied in many factual contexts. Does it apply also to Article II, Section 2 of the Constitution, which gives the President the power to grant pardons? Well, as to the pardon power, in this case, for state pardons and federal pardons, Florida offers pardons and restoration of civil rights separately. So this case does not force the further case that we've been alluding to in our briefing. In the further case where a state or perhaps Florida made the pardon the single and exclusive means by which someone could regain the right to vote, that would be the case that would force the confrontation whether the First Amendment is violated. If the President grants a pardon, that restores the right to vote, correct? Pardon from a federal conviction, obviously. At present, it does. Okay. It could be handled separately. So why wouldn't your argument and your argument that it's standardless, it's facially unconstitutional, apply to the President's pardon power? The states set voting eligibility requirements and states disenfranchised felons pursuant to Section 2 of the 14th Amendment. Right now, if the federal government, if the President pardons someone as a matter of just natural flow of things, they will be reenfranchised as a matter of course in a state with automatic restoration. So the First Amendment restrictions viewpoint requirements of non-discretionary, non-arbitrary standards apply then under your view to the President's pardoning power? Our position is in the further case where someone brought a challenge either to discretionary state pardons or discretionary federal pardons. It would be the case that the right to vote, the fundamental right to vote and restoration or reallocation of that right would have to be handled separately, such that the issuance of a grant of a federal state pardon. Your position is that Article 2, Section 2 is unconstitutional by the later amendments to the extent that it does not require or provide for non-discretionary standards for the President's granting of pardon power, which automatically affects the right to vote, at least in federal elections? This case doesn't raise that issue, but I do want to address Your Honor's point based on the history. The history of the clemency power going back to the English monarchy is this. Voting rights and voting rights restoration obviously had no place in clemency because one could not vote under the English monarchy. In America, now in a democratic system of government, states have made a choice to incorporate voting rights restoration into the executive clemency process. Now that they've incorporated the voting rights restoration and arbitrary licensing scheme for the right to vote into that clemency process, this raises constitutional problems. Now that there are these constitutional problems in the clemency process, the appellants say, well, these will raise all sorts of other constitutional defects and other species of clemency. But there is a limiting principle that this Court and other courts that confront this issue can apply. If the judgment is affirmed, if our constitutional argument is upheld, then other species of clemency can be considered. First, pardons. Voting rights restoration can be handled separately from both the state and federal pardon power. And as to other forms of clemency or other phases of the criminal justice process, such as parole, probation, commutation of sentence, the courts can say that is simply too attenuated and too far removed from the right to vote, which is protected by the First Amendment. Voting rights restoration directly implicates the First Amendment right to vote, but commutations of sentence merely have an incidental effect. Yeah, but a pardon. If the President pardons someone whose convictions are of federal statute violations, that automatically restores the right to vote in most states, does it not? Correct. Okay. So under your position, the President can't have an unfettered discretion to pardon people because it's a risk of viewpoint discrimination, and the First Amendment permitting doctrine doesn't allow that. I want to clarify one point on this issue, Your Honor. We did look this up, and 28 CFR 1.2 talks about the federal pardon power. And they do say there, no petition for pardon should be filed until the expiration of a waiting period of at least five years after the date of the release of the petitioner from confinement. It also says no petition should be submitted by a person who is on probation, parole, or supervised release. That is no standard. There are literally thousands, tens of thousands, if not hundreds of thousands of people who meet those criteria. And the point is, do you have to have, does the President have to have and follow standards and criteria for granting pardons to those people are not under your position? No, Your Honor. What is the difference? Voting rights restoration can and should be handled separately. But it isn't. Under the existing regime in virtually every state, if someone has a federal felony conviction, at least of a certain category, and the President pardons them, they get their right to vote back. So are 48 states or whatever subset of them that provide that, is that unconstitutional because it allows the risk of the President exercising viewpoint discrimination? To be accurate in my response, Your Honor, I have to note that there are 37 states in the country that automatically restore the right after the completion of incarceration, parole, or probation, or in the case of Nebraska, after a two-year waiting period. In all of those states, perhaps only minus Nebraska, so 36 states, the only circumstance in which the federal pardon power would raise the issues Your Honor is talking about is if the federal pardon was granted prior to the completion of the sentence. But the CFR says expressly that it shouldn't even be applied for until the full sentence is completed. I know what the CFR provides, and you know how little restriction that actually places on a chief executive who doesn't want to abide by it. I understand. I understand. So my response to the question is this. If in the future case someone were to challenge the federal pardon power based on the same principle established in this case, the remedy would not be that the President has to abide by specific and neutral criteria and standards. The remedy as we see it is voting rights restoration simply has to be forced out of the process and separated. Same with the state pardon power. Your position would require federal injunctive relief ordering the states to separate voting right restoration from pardoning. Correct. In that future case, which this case does not force that issue, but in the future case, if someone were to challenge discretionary pardons, which are very limited in both their granting and very limited in where they're available pre-sentence completion, I reviewed the state's amicus brief that was submitted, and it showed that many of these states have post-sentence completion waiting periods for pardons that are in excess, often far in excess of the waiting periods for voting rights restoration. And so in that limited case, if someone were to bring a challenge to the discretionary pardon power, yes, our position in that future case would be that the principle established under the First Amendment means that voting rights restoration, that one component of the pardon power must be separated back out from the bundle of rights and benefits that are conferred. Let me ask you about some old wine, as the district court put it. The third question presented in the Beecham CERC petition is, does not the procedure outlined in the Florida statutes, the Florida Constitution, and the regulations of the body formerly known as the Pardon Board violate the Constitution in that there are no ascertainable standards governing the recovery of the fundamental right to vote? If the answer to that question is no, it doesn't, double negative, but no, it does not violate it, then you lose, don't you? Well, Beecham only concerns the equal protection. I just read you the question, and I'm asking you if the answer to that question is no, violate the Constitution. If the answer to that is no, an unqualified no, then you lose. Respectfully, I would disagree, Your Honor. The only constitutional question presented in Beecham is an equal protection. I understand that. I understand that, and you've made your point. But my question to you is, if the procedure outlined under Florida law does not violate the Constitution in that there are no ascertainable standards governing the restoration of the right to vote, if that answer is an unqualified no, it does not, you lose. I would reiterate the same. I know you would, but answer my question. I disagree that we lose on our First Amendment question. Even if the Supreme Court came out and said, look, we know the third question, the cert petition. Let's take the restrictions off. It doesn't violate any part of the Constitution. You would lose. So the jurisdictional statement, as I read this Court's opinion in Hardwick v. Bowers. You're going to tell me if the Supreme Court said that, you would still prevail? On the First Amendment questions, yes, because Beecham didn't. Because the Supreme Court doesn't know what it's talking about when it says any part of the Constitution, which is my hypothetical to you. Counsel, you don't have to take an impossible position. Your answer ought to be, yes, we would lose if they said that, but they didn't say that because it was in the context of an equal protection. I understand. And we have virtually conceded all that we can do but concede that we lose on the equal protection ground. Right, understood. I must have misunderstood your understanding. I understand, but the way to preserve your credibility is how you've done it in your brief. All but concede the equal protection. Now, let's talk about the First Amendment, which isn't covered by Beecham. If I may just say one more thing on Beecham, Your Honor. The way we read Hardwick v. Bowers is that the jurisdictional statement that the plaintiffs in Beecham presented to the Supreme Court, it wasn't a cert petition. The three-judge court's opinion is not what's binding. It's the summary affirmance, which is silent as to its reasoning. The Supreme Court may well have decided that all we need to decide in this case is that the discretionary pardon power is constitutional. And because Beecham did not apply for voting rights restoration, which was separately offered in 1968, we don't need to reach any of the constitutional implications of discretionary and arbitrary control over the voting rights. That's our position on Beecham. It concerned only the equal protection clause. I understand Your Honor's point. We would move on to the First Amendment. And on the First Amendment, we held and burdened, did we not, that the First and Thirteenth Amendments afford no greater protection for voting right claims than that provided by the Fourteenth and Fifteenth? That is correct, Your Honor. And also in Cook, we dismissed the First Amendment claim as redundant to the others, explaining that the First Amendment affords no greater protection for voting rights claims than already provided by the Fourteenth and Fifteenth Amendments. Burton's holding could not exceed the limits of the facts and claims raised in that case. A holding can't go beyond the actual claims presented. And there was no First Amendment. Your position is that statement would control if it was a holding, but it's not a holding, so we're not bound by it. It is a holding to the extent it covers the actual facts and the actual claims in that case, which mostly concerned racial discrimination and the denial of an annexation petition. The plaintiffs in that case – Mostly, but not entirely. Mostly, but not entirely. But if you look at the appellant's brief, the Burton appellant's brief, which appellants in their reply brief quoted from, they said expressly, plaintiff's rights to be free of racial discrimination in voting are protected by these amendments, by the First and the Thirteenth Amendments. So the plaintiffs in Burton just doubled down on their racial discrimination claims in raising their First Amendment arguments. This court has held consistently – I'm referring back to the concurring opinion in United States v. Hunter – that the holdings of a prior decision can reach only as far as the facts and circumstances presented to the court in the case which produced that decision. The First Amendment holding in Burton could only go as far as the racial discrimination argument that was made and the denial of an annexation petition. There was nothing to the extent it veered beyond those facts and beyond those claims. It was dicta that's not binding on this court. In Cook, the plaintiff didn't even suffer an injury. So as we read Cook, the real holding there is that the case was moot. There was no standing – or not even ripe. He had no injury and there was no standing. So any statement in that case that reiterated the broad language, the broad dicta from Burton, was again dicta and not binding on this court. Defendants have also said they've tried to make it sound like there is a single unitary right to vote claim. But there is no such thing as a single unitary right to vote claim. There are a multitude of constitutional doctrines that protect the right to vote. And in that case, there was not a First Amendment unfettered discretion claim as there is here. Defendants just want to keep things at a high level of generality so that Burton sounds preclusive, but it isn't. So Burton must be narrowly construed and limited to its facts and claims. It could not possibly have decided that for all the myriad factual circumstances and all the myriad First Amendment doctrines that might come before this court now and forever, that the First Amendment provides no greater protection than the 14th Amendment when it comes to voting rights. And we know that's not the case because of the Supreme Court's binding precedence in the First Amendment unfettered discretion cases. The decision in Forsyth County says expressly that, and I'll read the quote, facial attacks on the discretion granted the decision maker are not dependent on the facts surrounding any particular permit decision. The success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decision maker rests not on whether the administrator has exercised his discretion in a content-based manner, but whether there is anything in the ordinance preventing him from doing so. This court has said exactly the same thing in Miami Herald Publishing v. Hallandale. In the unique context of First Amendment challenges upon the facial validity of licensing statutes, it is the very existence of official discretion that gives rise to the threat of injury sufficient to warrant an injunction. Defendants in the reply brief ignored these cases. They ignored all of the cases we listed on pages 34 and 35 of our brief. Roach from the Eighth Circuit, Fernandez v. Limmer from the Fifth Circuit, Students for Life v. Waldrop, all of them stand for the proposition that we do not need to prove actual intentional discrimination in order to make out a First Amendment unfettered discretion claim. That's the teaching of Forsyth County and Miami Herald, but they ignored these precedents in the reply brief. The risk or threat of constitutionally impermissible bases for rejecting a license application or rejecting a voting rights restoration application is always present when there is unfettered discretion given to state and local officials to decide whether or not— that the licensing process is in some way narrowing, and so we put restrictions on it. Why is it legitimate to compare here, where the right to vote is gone at the moment, to a licensing scheme with a constitutionally protected right? Why is that a legitimate comparison? I want to make two points, Your Honor, on this question, on making the leap to the analogy to the First Amendment unfettered discretion cases. One, the appellants say that there is no First Amendment-protected right to vote here because felons have been duly disenfranchised pursuant to Section 2 of the 14th Amendment. I think an analogy is clarifying here. Sixteen- and 17-year-olds are presently ineligible to vote in Florida. They are uniformly and categorically disenfranchised, and therefore they have no basis under the First Amendment to challenge that ineligibility. That's the teaching from cases like the district court opinions in Johnson v. Bush and Farrakhan v. Locke, Howard v. Gilmore. There's a whole litany that they cite in the string site. We don't make the argument that the First Amendment per se prohibits felon disenfranchisement. This case is about arbitrary reenfranchisement. If those same 16- and 17-year-olds were now allowed to apply for the right to vote by state or local election officials, and state or local election officials had unfettered discretion to grant or deny those applications for the right to vote, now they would have a First Amendment injury whereas they previously didn't. It is that arbitrary licensing of the right to vote, that arbitrary allocation or reallocation of the right to vote to a group that would otherwise be ineligible to vote. If Florida had made the decision to uniformly disenfranchise for life all felons in the state, there would be no constitutional issue. But once they decide to reenfranchise some felons, they cannot do so arbitrarily. Isn't that the risk of your challenge, that Florida could simply say, we're not reenfranchising? Absolutely, Your Honor. That is a risk that we understand. But based on their briefing on the motion for stay, they've said they have no intention of doing so. When they made such statements to the district court, it amounted to so much bluffing. They could go back and do it. Let's say we agree with you the day after we agree with you and just announce, okay, fine, no more reenfranchisement. Congratulations. Absolutely, Your Honor. That is a risk that we understand. But given the last seven and a half years where only a couple hundred people per year have been given the rights to vote back through the process, it could scarcely get worse than it currently is. So you're willing to throw the next couple of hundred under the bus and say that's not enough to fool with? That's not our risk assessment, Your Honor, respectfully. Our risk assessment is the process has been dropped from 154,000 over four years granted to around 3,000 over the last seven and a half years. Let me take this out of abstract and get a little more specific. The district court, it says it's the very existence of discretion. Reading charitably, it meant unfettered discretion. That gives the risk of viewpoint discrimination and violation of the First Amendment. So what is the minimal amount of fettering that you would say prevented a violation of the First Amendment? What does Florida, the minimum amount of things that Florida has to do to restrict that discretion? Give us an example. I think that they took steps in that direction with their draft rules, but this is a very difficult, even impossible question to answer in the abstract. We would need to evaluate a new restoration scheme and see whether it cures the First Amendment violation. By that I mean does it eliminate the risk that the Executive Clemency Board So long as you have some discretion, how can you eliminate all risk? There is a minimal amount of discretion in accepting voter registration applications. Voting registrars have to make calls, judgment calls sometimes, about whether someone has adequately put down their driver's license or ID number or adequately done the oath. That's about identification. What would you do in this context? Tell us some of the things that Florida can do to make their system constitutional under the district courts and your position. They can establish specific and neutral criteria. Such as what? They can look to criminal records, which are objective and can be reviewed. Put a point system on them? Your Honor, I'm not going to today, respectfully, I'm not going to suggest what would be a constitutional scheme for them to adopt. Counsel, surely you've been with this case for a long time. Surely you've given some thought to what you're asking the federal courts to require them to do. We have. We asked the district court to impose a system that would look at just whatever waiting period was in law for the specific felony that was committed. And after that crime, after that waiting period had elapsed, to automatically restore the right to vote. We lost that issue. We lost on that issue and we didn't appeal that. Right. So the injunction as it stands calls for specific neutral criteria to be imposed. I couldn't suggest today what would be objective requirements that the board could look at. Their staff would have to evaluate what they can do, what's objective, what can they look at within their system and within other materials that they can gather and evaluate whether or not that individual who's applying or submitting a notification or just getting information from the Department of Corrections. Do you know, and I can tell both sides have looked closely at regimes in other states, do you know of any other states' non-automatic restoration criteria that you think is constitutional? So some of these, I wouldn't say in the abstract that they're constitutional, but there are states like Nevada and Arizona that talk about first-time offenders versus recidivists. There are states that look at the seriousness of the felony that's been committed and divide out the different categories, whether there's been violent physical harm as part of the crime, that's in a different category, whether it's been a sex offense. But is it a formula or do you just consider these criteria and at the end you have a chief executive or a chief executive cabinet making the decision? These are basically eligibility criteria. They put you into one of two buckets. One would be automatic restoration. But once you get in the eligible bucket by the standards, objective standards, let's call them objective. Sounds like there's some leeway, but let's call them objective. Then there's still discretion in the bucket. Pure and unfettered discretion, Your Honor. In the 11 states that we counted as 11 that have pure and unfettered, that have discretionary restoration of the right to vote for some or all felons, Florida is in the small group that does this for all felons. Once you're in that bucket, there are no standards, no rules, no criteria. As in Florida, there's nothing governing those decisions. So those states. And how many are there of those states other than Florida? I count Florida, Virginia, Iowa, and Kentucky. The other seven states for some portion of the felons, either first-time offenders or less serious offenses, there is an automatic restoration rule for some categories. I understand. But how many states do you, once you apply the criteria, you land up with an eligible bucket for which there is discretion? In which there is discretion? Eleven. Eleven. All right. Are those other 11 states or other 10, depending on where Florida is in, are they unconstitutional because once you get in the bucket, there's discretion and viewpoint discrimination opportunities? The very existence of which creates the risk of a constitutional violation? Our position is this principle should be applied to all of those states. There's no reason to distinguish them. They're holdovers and vestigial regimes, you know, that still are incorporating voting rights restoration into executive clemency process. So those 11 would be unconstitutional too? That's correct, Your Honor. The only caveat I would put on that, again, this goes back to our dialogue on the pardon power is Kentucky, I believe, is the only state in the country that makes voting rights, makes the pardon the single and exclusive path to voting rights restoration. So that would force the further question of whether or not the discretionary pardon power is unconstitutional as to the voting rights restoration component. And this case doesn't force that issue. Even if this got to the Supreme Court, there are ways to limit the holding, limit the holding of this case. So it only applies to voting rights restoration, which directly and specifically implicates the First Amendment right. But according to your argument, the only thing that would be constitutional is putting in criteria that led to the automatic restoration. Because if you have any other scheme, you can cabin the decision, but at the end, there is unfettered discretion. We would submit that what we're asking for is not eligibility criteria. We want rules, standards, and criteria that govern the actual substantive decision on whether to grant or deny the license. So that it leads to automatic reenfranchisement, that you start plugging in a formula, that somebody could sit in a dark room and it just would be automatic. They would plug them in. And if you go through the steps, you would get it. Because how else do you avoid a moment of unfettered discretion? That may well be the logical outcome of what exists in all these cases. It's automatic reenfranchisement. Not automatic reenfranchisement. What it is, respectfully, it's an application process. We fought against an application requirement. We fought for automatic restoration. We lost those arguments. If Florida were to come up with a scheme that would involve an application and then the Office of Executive Clemency reviewing whether or not that person fulfilled certain specific and neutral criteria based on a review of their criminal records or payment of fines and restitution, et cetera, that could lead to restoration. Automatic restoration. If you check all the boxes, you have to get it. How else do you eliminate unfettered discretion at the very end? I understand, Your Honor, but we agree that that's probably what would have to exist in order to eliminate the risk of viewpoint discrimination. But you've lost that battle, as you would concede. I mean, you're arguing in a way around the loss of the automatic reenfranchisement and talking about these criteria. But at the end of the day, they're still unfettered discretion unless we go with automatic restoration. Tell me where I'm wrong in that. To be clear, what we lost was that the district court could not impose automatic restoration. But if the First Amendment principle commands, and we believe it does, the First Amendment principle that we've fought for in this case commands that there be specific neutral criteria, and that would be Florida coming up with a neutral and specific criteria regime by which people would be restored to their right to vote. And that's what they got closer to with their draft rules, which they were about to discuss and vote on when this court stepped in and stayed the injunction. But to the extent that at the end of the day, however small, the second, third, or fourth bucket is, if there is any discretion under your view, it's unconstitutional. Correct, because the Supreme Court's binding precedent, Your Honor, says that you cannot have an arbitrary licensing scheme for First Amendment protected rights. It gives rise to the risk of discriminatory bias and arbitrary treatment. We've seen that in this case where people are denied for speeding tickets, denied for arrests that don't lead to prosecution, denied for drinking in moderation, denied for a whole host of reasons, including whether or not the governor, quote, unquote, feels comfortable on a given day. That simply is inconsistent with the First Amendment precedents and inconsistent with the values of a democratic system of government. That's very helpful. I appreciate that answer. Now, Mr. Agarwal, you've got six minutes. Thank you, Your Honor. Thank you, Your Honor. Judge Branch, the answer to your question is yes. The logical implication of plaintiff's position in this litigation is that clemency officers have zero discretion. I'd respectfully direct the Court's attention to page 16 of plaintiff's answer brief where they explain that they're relying on First Amendment case law that provides for, quote, a zero-tolerance policy with respect to even the risk of discrimination. So if plaintiff's novel constitutional theory is accepted by this Court, we're going to go from a situation where right now you have case law from the Supreme Court and this Court expressly and unambiguously approving of unfettered discretion in clemency, and you're going to go to exactly the polar opposite where clemency officers would have zero discretion. That is a radical change in existing law, and it illustrates the dangers of reasoning by analogy to case law that articulates kind of some principles at a high level of generality that have never been applied, as this Court pointed out in its stay order, to convicted felons. I'm not even sure that's been applied to permitting policies in the First Amendment. I think Your Honor is right. I mean, there are so many problems with the argument. It would have to be First Amendment case law would have to be extended in a whole lot of different ways to get to this conclusion, and then you'd be in a situation where you would have irreconcilable case law with respect to clemency proceedings, and there's no reason for this Court to go down that road. And let me ask you about one other argument that you raised in your brief, and I think we've reached that point of it, that if we were to agree with the other side's position, that we would in essence be saying you have to come up with neutral criteria and then at the end of the day, it's an automatic reenfranchisement if certain criteria are met. Let's talk about separation of powers, that we would be ordering you to set up that system? That's right, Your Honor. If plaintiffs are right, the district court would have to direct the clemency board to promulgate neutral and specific criteria, eliminating any risk of discretion from clemency decisions implicating restoration of voting rights, and as Your Honor points out and we've argued in our brief, that would contravene both vertical and horizontal separation of powers principles. Although at its heart, the district court order was essentially you don't have any standards, the board just creates some standards. I mean, that's what the court said. You create your own standards and that's what the board appealed, right? I'm sorry, I didn't hear. That's what the board appealed, the court saying you go create your own standards. That's what we're here talking about, right? I think Your Honor is right. The district court did order the board to promulgate new standards. As Judge Branch points out, those would not just be open-ended flexible standards as, for example, the statutory sentencing factors set out in 18 U.S.C. 3553A. You would have to have basically objective criteria that would provide for automatic restoration of voting rights, and we've never had any court in the history of the country order a state to promulgate neutral and specific criteria to direct clemency decisions. One reason why the separation of powers problem here is so acute, Your Honor, is because we have case law from the Supreme Court holding that a state need not enact any clemency process in the first place. For example, Herrera v. Collins, which is cited in our reply brief, and, of course, Richardson v. Ramirez, which makes it clear that a state need not have any clemency process by which the right to vote in particular. In Ohio, Adult Parole Authority v. Woodard, the Supreme Court decision, I believe in a concurring opinion, Justice O'Connor acknowledged that pardon and commutation decisions have not traditionally been the business of the courts, but she rejected the notion that the due process clause provides no constitutional safeguards. We're not just talking about the due process clause, but this unfettered discretion with no constitutional implications. I mean, it seems the court is not really suggesting what you just suggested. We would respectfully disagree, Your Honor. I think you raise a really, really important point, and let me put it this way. On page 276 of the Woodard decision, the opinion of the court states clearly and unambiguously, this is not just Justice O'Connor, this is the opinion of the court at 523 U.S. at 276, that the clemency power is committed, as is our tradition, to the discretion of the executive. And the full court, again, says the clemency powers historically have not been the business of the courts and, therefore, have been subject to limited, if any, judicial review. Justice O'Connor, as Your Honor points out, doesn't have any quarrel with that proposition. In her concurring opinion, she does kind of create a safety valve of sorts. And the safety valve says if you have a kind of gross malfunction, then she's going to leave open the possibility that judicial intervention, in her words, might be appropriate. And she illustrates the kind of situation that you'd have to have for that safety valve to apply. One, you'd have to have a situation in which a clemency officer is flipping a coin to determine whether clemency should be granted. Or, two, you'd have a state completely arbitrarily deny the clemency applicant any access to its clemency process. Your Honor, I want to be clear about this. We are not saying that the Constitution doesn't apply to clemency processes. It absolutely does. Our position is that applicable constitutional requirements are satisfied if you have a discretionary clemency process. Would that be more along the lines of an as-applied challenge? That's exactly right. And that's the kind of situation to which Justice O'Connor's concurring opinion appears to be referring, as well as this Court's decision in Banks v. Secretary of the Florida Department of Corrections, which also leaves open the possibility that if you have a gross malfunction of that kind, that judicial intervention might be appropriate. As this Court emphasized in its stay order, we don't even have an allegation or suggestion that anything like that happened to the plaintiffs in this case. I see that my time has run out. I'm, of course, happy to answer any other questions that Your Honors might have. Thank you. That was well argued on both sides. We appreciate that. Next case up is Randolph v. U.S.